# CHARLESTON.

## CHAMBERS *v.* CRAMER *et al.*

### Decided March 30, 1901.

1. NUISANCE—*Blacksmith Shop.*

    A blacksmith shop or a machine shop is not a nuisance *per se.* (p. 400).

2. EQUITY—*Nuisance per se—Presumption.*

    It is a general rule that when the thing complained of is not a nuisance *per se,* but may not become so, according to circumstances, and the injury apprehended is eventual or contingent, equity will not interfere; the presumption being that a person entering into a legitimate business will conduct it in a proper way, so that it will not constitute a nuisance. (p. 401).

3. INJUNCTION—*Evidence Must be Clear.*
> To warrant the perpetuation of an injunction restraining, as a threatened nuisance, the erection of a building proposed to be used for legitimate purposes, the fact that it will be a nuisance if so used must be made clearly to appear, beyond all ground of fair questioning. (pp. 403, 404).

4. BUILDING—*Increase of Insurance.*
> That erection of building will increase rates of insurance upon neighboring property is not ground for injunction to restrain such erection. (pp. 404, 405).

Appeal from Circuit Court, Mingo County.

Bill by S. T. Chambers against George F. Cramer and J. W. McCready. Decree for plaintiff, and defendants appeal.

*Reversed, and bill dismissed without prejudice.*

H. K. SHUMATE and JOHN S. MARCUM, for appellants.

SHEPPARD & GOODYKOONTZ, for appellee.

McWHORTER, JUDGE:

S. T. Chambers filed his bill in the circuit court of Mingo County against George F. Cramer and J. W. McCready, alleging that he was the owner of certain valuable real estate in the town of Matewan, in said county, known as lot 14, upon which was located a valuable house which he, with his family, occupies as a residence and in which he had been keeping a hotel for several years. Said house had cost something like a thousand dollars, was in good repair and condition suitable for the entertainment of guests and the traveling public. He also had on said lot another valuable store building, costing and worth at least one thousand four hundred dollars; that in the hotel plaintiff had valuable personal property consisting of household and kitchen furniture worth several hundred dollars; that plaintiff, together with his son, as partners, had a stock of merchandise in the storehouse of value more than five thousand dollars, in which plaintiff had an important and controlling interest; that recently defendants claimed to have purchased a lot in close proximity to plaintiff's property, there being only a small alley of fifteen feet width intervening between the two properties; that plaintiff was informed that defendants were going to

construct a building on their said lot in which they were going
to locate an engine and conduct what they called a machine shop
and blacksmith shop; that soon afterwards plaintiff served notice
in writing upon defendants that they should not construct such
a building nor should they be permitted to keep and maintain
any machine shops so close to the property of plaintiff, reciting
that such shops and engines would greatly impair the value of
plaintiff's property and endanger it by exposure to fire; that the
same would constitute a nuisance which plaintiff would enjoin;
that defendants paid no attention to said notice, but proceeded to
the full construction of said building, and openly proclaimed
their purpose of locating an engine therein and conducting a
blacksmith and machine shop thereon, all of which would greatly
reduce the value of plaintiff's property; that its location would
constitute a great menace and danger to the property of plain-
tiff and others; that said building was a worthless wooden and
cheap affair and liable and likely to be ignited by sparks
emanating from the chimneys of the furnace of said blacksmith
shop and the smokestack of the engine which they were threat-
ening to locate in said shop; that if allowed to conduct said
shops the noise and confusion occasioned by the workings and
equipments of the shops would greatly disturb, annoy, irri-
tate and confuse the plaintiff, his family living in the hotel, his
guests and servants as well; that the location of the shops or
engine would diminish not only the value of the property but the
comfort and enjoyment of it; that the nuisance and incon-
venience which said shops or engine would occasion would ma-
terially interfere with the ordinary comforts of human exis-
tence; that it was being constructed so close to plaintiff's prop-
erty as to almost darken the windows of his buildings; that if
said shops and engine were allowed to be operated and con-
tinued, smoke, effluvia and cinders from the chimneys of said
building and said engine would constitute an offensive, obnox-
ious and undesirable element against the comfort and enjoy-
ment of plaintiff's property; that since the construction of said
shop the insurance companies had already increased the pre-
miumn paid and to be paid by plaintiff on his property and he
had been notified by the insurance companies that if said shops
were maintained his insurance would be further increased; alleg-
ing that if defendants were allowed to conduct therein a black-

smith shop or to run machine shops therein it would comprise a nuisance of such a nature that the continuance of it would cause a constantly recurring grievance; that plaintiff was only able to procure insurance upon a portion of his said property and only for a low per cent. of its real value, and in case of fire great loss would come to plaintiff over and above the insurance valuation; that the establishment thereto would be an infringement of the property rights of plaintiff, and if permitted to be conducted or run or maintained they would cause irreparable wrong and mischief to plaintiff's property, and if allowed to be continued liable to produce immediate injury to plaintiff for which damage would afford no adequate compensation for the reason that the life of plaintiff as well as those of his family, guests and servants would be endangered; that J. W. McCready was insolvent, Cramer had no property in this State. except the interest mentioned worth perhaps not over four hundred dollars, and besides was a non-resident of the State. And prayed that defendants be perpetually inhibited and enjoined from conducting or maintaining such blacksmith shop, machine shop or works upon such premises and from locating any engine thereon calculated to endanger life or property of plaintiff, and for general relief. Plaintiff filed with his bill a map showing location of his property and the proposed building and the streets and alleys, also the notice served by him on defendants not to construct the building. On the 15th day of March, 1898, a temporary injunction was granted by the judge in vacation as prayed for in the bill. On the 18th day of May, 1898, defendants filed their demurrer, which was set down for argument. Defendants also tendered their joint and separate answer, to which plaintiff filed five exceptions, which exceptions were overruled and the answer filed. The answer denied all the material allegations of the bill, averring there would be no extraordinary danger from fire, that the machinery proposed to be put into the shops was of the most approved kind, almost wholly noiseless, denied that any smoke, effluvia or cinders or anything of the like nature would constitute any undesirable element against the comfort and enjoyment of the property of any one, or that it would increase the insurance on any building in the town of Matewan, or that the construction and operation of said plant would in any manner constitute a nuisance of any nature what-

ever or cause any wrong or mischief to the property of plaintiff
or anyone else; denied the insolvency of either of the defendants
and the non-residence of defendant Cramer; averred that they
proposed to operate in said building two turning lathes, one
planer, one shaver, one boarding mill, besides the blacksmith
shop, the machinery of which would be put in place and oper-
ated by defendant McCready, described fully the proposed
building, how it was to be constructed, sides covered with sheet
iron, the roof made fire-proof, the floor of dirt, and that the
whole of said building would be as near fire proof as it would be
possible to make it; the forge in the blacksmith shop would be
of the most improved pattern and the fire when put in the forge,
(which is the only time even in the old patterned forges there
could possibly be any danger), would be what is known as
"hooded," that is, that the smoke, sparks, etc., would be col-
lected in a funnel shaped smokestack and carried out of the
building through a flue; that they had purchased and paid for
over two thousand dollars worth of machinery to go in said
plant, which machinery had arrived at said town of Matewan
before the injunction was granted in this cause, and that the
continuance in force of said injunction was absolutely ruinous
to defendants' business and to their property rights; that it was
not their intention to injure the property rights of plaintiff or
anyone whatsoever, but merely desired to pursue a lawful, legiti-
mate and useful business on their own property; and that said
business instead of a nuisance, danger or menace was an enterprise
badly needed in the town of Matewan; and again denied each
and every allegation of said bill not specifically denied or ad-
mitted in the answer, and pray for the dissolution of the injunc-
tion and they be allowed to complete their said building and to
conduct and maintain their business, and that the bill be dis-
missed.   On the 1st day of June the cause was heard upon a
written notice of motion to dissolve the injunction, when it was
heard upon the bill and exhibits, the joint and separate answer
of defendants and general replication thereto upon the deposi-
tions of witnesses taken and filed in the cause both by plaintiff
and defendants, and upon the affidavits filed by plaintiff, when
the court overruled the motion to dissolve the injunction and
gave plaintiff judgment against defendants for costs of the
motion.   Further depositions were taken after this hearing of

the motion and filed in the cause. The cause was heard finally on the 12th day of October, 1898, when the court perpetuated the injunction and rendered judgment against defendants for the costs of the suit, from which decree the defendants appealed to this Court, and say the court erred in awarding the injunction on the 15th of March, 1898; and in not sustaining defendants' demurrer to the bill and in refusing to pass upon the said demurrer, either overruling or sustaining the same; in refusing to sustain the motion to dissolve the injunction made on the 1st day of June, 1898, and in continuing the same in full force and effect. And in refusing to dissolve the injunction on the 12th day of October, 1898, when the case was submitted for final decree and in entering its decree perpetuating said injunction and striking said cause from the docket. Should this injunction have been granted upon the case made out in the bill? The defendants were engaging in a proper and legitimate business, in harmony with, and in furtherance of the material interests of the town and community, one of the many useful industries that mark the progress of that rapidly developing section of our State. It would seem that inducements would be offered to encourage the building up of industries of that character.

"It is a general rule that when the thing complained of is not a nuisance *per se* but may or may not become so according to circumstances and the injury apprehended is eventual or contingent, equity would not interfere. The presumption is that a person entering into a legitimate business will conduct it in a proper way, so that it will not constitute a nuisance; so when a building in course of erection, or about to be erected, will not of itself constitute a nuisance, equity will not enjoin it on the ground that it may be used for a purpose which will make it a nuisance. If the building is in fact used in such a manner as to create a nuisance, its use for such purpose will then be enjoined." 14 Enc. Pl. & Pr. 1129, and cases cited. In *Hough* v. *Doyleston,* 4 Brews. (Pa.) 333, it was held, "that in order for equity to enjoin a private nuisance the danger must be impending and imminent and the effect certain, not resting on hypothesis or conjecture, but established by conclusive evidence. If the injury be doubtful, eventual, or contingent, or if the matter complained of is not *per se* a nuisance, an injunction will not

be granted.  In cases of prospective nuisance, a court of equity will not interfere unless the damages to be apprehended will be serious, nor when upon balancing the inconveniences or injuries, greater injury will be inflicted by granting than by refusing an injunction."  The property rights of defendants as well as plaintiff must be considered.  These defendants had purchased this ground for the location and conducting of a legitimate business, and industry in the line of the progress and growth of the town and community, and according to the evidence had expended over two thousand dollars for the equipment of their business with machinery and appliances of the latest and most improved pattern and make.  The testimony taken and filed in the cause of all who pretended to know anything about the machinery proposed to be used by defendants is to the effect that it is almost noiseless and without danger from fire, while the evidence to the contrary is principally by men who know little or nothing about machinery and base their opinions (and their evidence is almost wholly "optional evidence") upon their knowledge or observation of the conduct of country blacksmith shops.  In *Mygatt* v. *Goetchins,* 20 Ga. 350, it is held that, "when the thing complained of will not *prima facie,* be a nuisance, and the answer denies that it will be such, the preliminary injunction will be dissolved, and if injury thereafter results from the alleged nuisance, ample relief can be afforded by the jury at the hearing."  *Flint* v. *Russell,* 5 Dil. (U. S.) 151, and in *Bowen* v. *Mauzy,* 117 Ind. 258, it was held, that in order to restrain a person from commencing the operation of a business in itself legitimate, it should be made to appear that the person about to enter into such business threatens and intends to conduct the business in a manner which will constitute a nuisance, and in *Harrison* v. *Brooks,* 20 Ga. 537, it is held, "a court of equity will only exercise the power to restrain nuisances in the course of erection in cases of necessity when the evil sought to be remedied is not only probable but certain; and it will be the less inclined to interfere when the establishment from which the injury is apprehended will have a tendency to promote the public convenience," and in *Attorney General* v. *Steward,* 20 N. J. Eq. 415, "an injunction will not be granted to restrain the erection of a slaughter house and place for keeping hogs, when by the answer and affidavits it appears that the defendants intend to

carry on the business so as not to be a nuisance." See also *Keiser* v. *Lovett*, 85 Ind. 240; *Shiras* v. *Olinger*, 50 Iowa, 571; *Dumesnil* v. *Dupont*, 18 B. Mon. (Ky.) 804; *Dunning* v. *Aurora*, 40 Ill. 481. In *Powell* v. *Bentley*, 34 W. Va. 804, which was a suit to enjoin and inhibit a furniture manufacturing establishment from running as a nuisance to plaintiff in the use and enjoyment of his home and lot as a residence, when it was held that, "such cases depend in a peculiar degree upon their own facts and surrounding circumstances; so that courts of equity should proceed with great caution in abating or restraining such factory by injunction, and not enjoin unless the fact of nuisance is made in some way to appear clearly beyond all grounds of fair questioning." In *Faucher* v. *Grass*, 60 Iowa 505, the court says, "The conclusion is based upon the ground that a blacksmith shop is not a nuisance *per se*. We know of no authority to the contrary. The shop may be so constructed with a view to deaden the noise of the anvil and other noises, the forges may be so placed and the smoke and gases may be so conducted away, and the business may be so prosecuted that the shop would not be regarded by the law as a nuisance." *Rouse* v. *Martin*, 75 Ala. 510, (51 Am. Rep. 463). Livery stable is not a nuisance *per se*. *Kirkman* v. *Handy*, 11 Humphreys 406 (54 Am. Rep. 45). "Injunction to prevent erection of building for manufacturing purposes, on ground of its being a nuisance to an adjoining dwelling house will not be granted unless a very strong case is made, and one which is marked by some very peculiar features." *Walcott* v. *Melick*, 66 Am. Rep. 790, (3 Stockton's Chancery 204). "Business which is lawful, if carried on reasonably and does not affect health, comfort or the ordinary uses and enjoyment of property in the neighborhood, cannot be a nuisance in fact or in anticipation, and the courts will not interfere with it." *Rhodes* v. *Dunbar*, 57 Pa. St. 274, 98 Am. Dec. 221. "Equity will not enjoin if injury be doubtful, eventual, or contingent." *Id.* "Mere diminution in value of property, without irreparable mischief, is not ground for equitable relief by injunction." *Id.* "That erection of building will increase rates of insurance upon neighboring buildings is not ground for injunction to restrain such erection." *Id.* Appellee cites in support of his contention several authorities, some of which seem to favor him, and yet the most of them do not help his case,

*e. g.,* take *Whitney* v. *Bartholomew,* 21 Conn. 213, it is there held that a blacksmith shop is not a nuisance *per se,* but it was shown upon the trial that the large carriage factory and blacksmith shop having several chimneys and the shop and chimneys were placed near the dividing line between the lands of the parties; and in consequence of the location and use of the blacksmith shop, the cinders, ashes and smoke issuing therefrom were thrown in large quantities upon the plaintiff's house and land, rendering the water unfit for use and the house nearly untenable, the defendant was held liable. This is a case where an actual nuisance was established, the business was shown to be improperly conducted making it a nuisance to plaintiff by destroying his property for residence purposes. Also the case of *Bowen* v. *Mauzy, supra,* where it was held that the business of blacksmithing and horseshoeing is lawful and not in itself a nuisance, and the presumption is that one about to engage therein will conduct the same in a proper manner. So the case of *Ray* v. *Lynes,* 10 Ala. 63, it is held, "A blacksmith shop in a small village, is not in judgment of law a nuisance, so as to authorize a court of chancery to interpose by injunction and prevent its erection." Then, "Quere, whether a blacksmith shop might not be so inartificially and improperly constructed as to be peculiarly liable to fire, and subject to be abated as a nuisance in a town?" And appellant cites the case of *Faucher* v. *Grass,* 60 Iowa 505, where it was held that, "A blacksmith shop is not a nuisance *per se;* and a decree declaring a certain shop to be a nuisance, and restraining its further use as such, should not go so far as to restrain the further use of the lot on which the shop is situated, for such a shop." The judge in writing the opinion of the court, says: "The shop may be so constructed with a view to deaden the noise of the anvil and other noises, the forges may be so placed, and the smoke and gasses may be so conducted away, and the business may be so prosecuted, that the shop would not be regarded by the law as a nuisance. This may be true of a blacksmith shop erected on the *site of the present shop,* or upon any other place upon the lots of the defendants." The cases of *Tanner* v. *Village of Albion,* 5 Hill, (N. Y.) 121 and *State* v. *Gaines,* 30 Me. 65, cited by appellee are both for the supression of bowling alleys as nuisances and much of the same character as that of *Snyder* v.

*Cabell,* 29 W. Va. 48, wherein a skating rink was enjoined as a nuisance. Neither the bowling alley nor the skating rink is of any service to the community where it may exist and just to the extent it interferes with the enjoyment of any of the residents in the locality or causes any inconvenience it is a nuisance, being of no use to the public in any way whatever. The case most favorable to appellee cited by him is that of *Whittaker* v. *Hudson,* 65 Ga. 43, where it is held that "Though a blacksmith shop may not be a nuisance *per se,* yet the discretion of the chancellor enjoining its erection will not be controlled, when the affidavits submitted as to whether the shop, under the *circumstances of this particular case,* would constitute a nuisance, in his opinion, in favor of complainant." In the opinion the court says: "The granting of this injunction by the chancellor shows that the evidence in his opinion preponderated in favor of the complainant, and that he would allow a jury to pass thereon, and therefore, we will not interfere with his judgment. And we will add, that if he had refused it we should not have reversed it, but would have allowed the case to have gone before the jury under the law and let it be ascertained upon the trial whether in the enjoyment and exercise of a clear legal right, which is not declared by the law or the courts to be a nuisance *per se,* it is possible that it may be so used as to become a legal injury and an infringement on the legal rights of others, and therefore a nuisance." From reading the opinion in that case, I take it that it was shown conclusively that the allegations of the bill were sustained, which were that the action of the defendant was done to annoy and weary plaintiff and his family, and to force him to purchase the land upon which the shop was proposed to be erected at double its real value, and it was alleged in the bill and admitted in the answer that defendant had another blacksmith shop in the same village. Appellee seems to rely confidently on the principle that where the depositions are conflicting and different minds might reach different conclusions upon the facts, upon the testimony, the appellate court will decline to reverse the chancellor, even though the appellate court might have come to a different conclusion had it acted in the first instance, as announced in *Smith* v. *Yoke,* 27 W. Va. 639, and many cases since. This case cannot come within the rule there laid down; the evidence is not in relation to existing facts

and transactions had, but is something of a speculative character, as to whether the shops can be so constructed and conducted as not to become a nuisance. If after the shops are opened and operated they prove to be a nuisance to plaintiff or others in the comfortable enjoyment of their property, they will be entitled to relief therefrom by the abatement of the nuisance and the defendants will be held liable for damages.

For the reasons herein given the decrees of June 1st and October 12, 1898, are set aside and reversed and the bill dismissed, but without prejudice to another suit or action in case the shops when completed and operated should become a nuisance to plaintiff.

*Reversed.*