# CHARLESTON.

POPE BROTHERS AND COMPANY *v.* THE BRIDGEWATER GAS CO.

Submitted September 14, 1902.   Decided December 13, 1902.

1. INJUNCTION—*Nuisance.*
    To sustain an injunction, inhibiting the drilling of an oil or gas well, or other business, not *per se* constituting a nuisace, it must be shown that the danger of injury from it is impending and imminent and the effect certain.   (p. 253.)

2. INJUNCTION.
    The drilling of a well on a tract of land adjacent to another on which there is a producing well, and in close proximity to such producing well, cannot be enjoined on the ground of danger of ignition of gas from the completed well by fires in the furnace and forges used in drilling the other, when it appears that such danger would arise only in case it should become necessary to open the producing well for the purpose of repairing the pumping apparatus in case of accident, and that there is no existing cause for opening it, as mere possible, eventual or contingent danger is insufficient.   (p. 253).

Appeal from Circuit Court, Wirt County.

Bill by Pope Bros. & Co. against the Bridgewater Gas Company.   Decree for plaintiffs, and defendant appeals.

*Reversed.*

SMITH D. TURNER, for appellant.

T. A. BROWN and W. N. MILLER, for appellees.

POFFENBARGER, JUDGE:

The Bridgewater Gas Company appeals from an order made by the circuit court of Wirt County, refusing to dissolve an

injunction, obtained by Pope Brothers and Company, restraining the appellant from keeping its fires going in its boiler and forges in drilling an oil well near a completed well belonging to the appellees, which was producing both gas and oil. On the 15th day of May, 1901, Pope Brothers and Company drilled in their well on a tract of land owned by them, and at a point very near the line between it and a tract of land belonging to one Jacob Swisher on which the Bridgewater Gas Company had a lease for oil and gas purposes. Soon afterwards, the Bridgewater Gas Company located a well on its land at a distance of only about forty-two feet from the Pope well, put up its rig and placed its boiler and other machinery on the grounds. Before the drilling of the new well was actually commenced, it became necessary to open the Pope well, on account of an accident to the tubing and pumping apparatus, and, in doing so, considerable quantities of both oil and gas escaped from it. So strong was the flow from the well that some of the oil was thrown upon the derrick and rig of the Bridgewater Gas Company, and also upon, and beyond, said company's boiler, situated nearly eighty feet away from the flowing well, while the escaping gas enveloped everything around. Seeing this and realizing the certainty of a conflagration, in case the well should be opened when fires are going in the Bridgewater boiler, J. W. Bell, the Bridgewater Gas Company's superintendent, was requested to remove his company's boiler to a greater distance from the Pope well. This he refused to do, and later on, after the repairs to the machinery of the Pope well had been completed and the pumping of that well resumed, fire was started in the Bridgewater Company's boiler, and the work of drilling the new well was commenced.

On the 1st day of June, 1901, Hon. Lewis N. Tavenner, judge of the circuit court of said county, granted an injunction upon a bill presented by Pope Bros. & Co., restraining the Bridgewater Company from placing, or causing to be placed, carried or brought, within one hundred and fifty feet of the well, any fire by which the escaping gas might be ignited. Two days later, on motion of the defendants, after notice to dissolve, and after the filing of a joint and several demurrer, and answer, the court so modified the order "as to permit the said defendants to proceed with operations upon their said lease on the Swisher

farm so as not to endanger the well and derrick of the said plain-
tiffs," and further ordered "that when it becomes necessary for
the plaintiffs to pull the rods in the well and to remove the caps,
the said defendants shall, upon request, put out the fires in the
boilers and derrick for a reasonable time to enable the work to
be done." The motion to dissolve was continued. Affidavits
and depositions were taken and filed, and, on the 14th day of
February, 1902, the motion to dissolve was heard and overruled.

The principles governing this case are found in *Powell* v.
*Bentley & Gerwig Co.*, 34 W. Va. 804, *McGregor* v. *Camden*,
47 W. Va. 193, and *Chambers* v. *Cramer*, 49 W. Va. 395. In
view of the elaborate discussion of them found in these cases, it
is only necessary to advert to the facts disclosed by the record
which clearly bring the case within the principles. In *Mc-
Gregor* v. *Camden*, this Court held, that oil and gas wells are not
nuisances *per se*, and that, if there is any way that such well
can be operated so as not to make it a nuisance, only the un-
lawful operation thereof will be enjoined. In *Chambers* v.
*Cramer*, the general proposition is laid down that when a thing
complained of is not a nuisance *per se*, but may become so, ac-
cording to circumstances, and the injury apprehended is event-
ual or contingent, equity will not interfere; the presumption
being that a person entering into a legitimate business will
conduct it in a proper way, so that it will not constitute a
nuisance. In that case, JUDGE MCWHORTER has carefully re-
viewed a large number of cases illustrating the application of
this principle. They show that it is firmly settled and univer-
sally recognized by the courts.

This injunction is not to prevent a trespass. The defendant
was operating upon land upon which it held a lease for oil and
gas purposes and, in erecting its structures and placing its
machinery, it was doing what, ordinarily, it would have a right
to do, and acting at a place which, for the purposes of the bus-
iness in which it was engaged, belonged to it. Hence, the only
question is whether it was doing something upon its own prem-
ises which would injure the occupants or owners of adjoining
property. The drilling and operating of an oil well being a
legitimate business and lawful in its character, such acts can-
not be enjoined unless the circumstances under which they are

performed are such as amount to a nuisance, causing special injury to such occupants or owners.

Upon the facts stated in the bill, the injunction would probably lie; for it is alleged that the plaintiffs had taken every precaution and made use of every appliance and method known to close in the well and prevent the escape of gas from it, but that these efforts had been unavailing and gas was constantly escaping and spreading in every direction around the well for a distance of at least one hundred and fifty feet, so permeating the air that fire, brought within that distance of the well, would ignite it and cause a conflagration that would consume all the structures, stop the production of the well and necessitate cleaning it out. The bill further shows that the defendant had located its rig within about fifteen feet of the well and its boiler within about forty-five feet of it, and intended and was threatening to place fire in the boiler and begin the work of drilling a new well.

But the facts shown by the evidence clearly negative material allegations of the bill. It is admitted by practically all the witnesses for the plaintiffs that the Pope well was thoroughly packed and closed in, at the time the injunction was awarded, and that gas was not escaping therefrom in such quantity as to make it in the least dangerous to carry on the operation undertaken by the defendant. The boiler of the defendant was shown to have been at a distance of seventy-seven and eight-tenths feet from plaintiff's well, instead of forty-five feet. It does appear from the testimony, however, that it would have been dangerous to have had fire in the boiler and rig of the defendant, at any time when the Pope well might have been open for the purpose of repairing the pump, tubing or other apparatus used in bringing up the oil. But it is not shown that the Bridgewater Gas Company ever refused, or expressed an intention to refuse, to put out its fire at any time that it might become necessary to open the Pope well. It is made clear by the evidence that it was perfectly practicable for the defendant to drill its well without injury or danger to the property of the plaintiffs, and without inconvenience other than a cessation of operations during such times as it might be necessary to have the Pope well open for the purpose of repairs. Had it been shown that there was any purpose or intent on the part of the de-

fendant to permit its fire to burn when the Pope well was open and gas escaping therefrom, and that there was necessity for opening it and that it was impossible to do so, because of the refusal of the defendant to put out its fires, a case for injunction might have been made out. It was not enough to show that it might become necessary at some time to open their well and that it could not be done on account of the proximity of fire at the other well. Nor was it sufficient to show that accidents sometimes happen to the pumping apparatus used in oil wells, and might occur at plaintiffs' well before the one intended to be drilled by the defendant could be completed.

Mere possible, eventual or contingent danger is not enough. That injury will result must be shown beyond question. "In order for equity to enjoin a private nuisance the danger must be impending and imminent and the effect certain, not resting on hypothesis or conjecture, but established by conclusive evidence. If the injury be doubtful, eventual, or contingent, or if the matter complained of is not *per se* a nuisance, an injunction will not be granted." *Hough* v. *Doyleston,* 4 Brews. (Pa.) 333, approved in *Chambers* v. *Cramer,* 49 W. Va. 395, 400. JUDGE HOLT very well expressed, in *Powell* v. *Bentley & Gerwig Co.,* cited, a view which applies here, when he said, "According to our settled notions and habits there are convenient places—one for the home, one for the factory; but, as often happens, the two must be so near each other as to cause some inconvenience. The law cannot take hold of such inconveniences, if slight or reasonable, all things considered, but applies the common sense doctrine that the parties must give and take, live and let live; for here extreme rights are not enforceable rights—at any rate, not by injunction."

For the reasons aforesaid, the order refusing to dissolve the injunction must be reversed, the injunction dissolved and the bill dismissed.

*Reversed.*