# CHARLESTON

DICKINSON, ADM'R v. NEW RIVER ETC. COAL CO.

Submitted March 16, 1915.   Decided April 6, 1915.

1. RAILROADS—*Operation—Children of Coal Mine Employees—Duty of Company.*

   Ordinarily a coal mining corporation is under no duty, in the handling of its coal cars and motors on its private railway between the mouth of the mine and its yards or tipple, to keep a lookout for children of employees on such track, even though they reside in the company's houses on its premises and near the track.   (p. 150).

2. SAME—*Operation—Children of Coal Mine Employees—Use of Tracks —Licensee.*

   If the use of such track is not expressly or impliedly made incidental to the use of the house or measurably appurtenant thereto, children making use of the track, with knowledge of the company, are bare licensees.   (p. 150).

(LYNCH, JUDGE, absent.)

Error to Circuit Court, Fayette County.

Action by R. H. Dickinson, sheriff, etc., against the New River & Pocahontas Consolidated Coal Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Osenton & Horan,* for plaintiff in error.

*Dillon & Nuckolls,* for defendant in error.

POFFENBARGER, JUDGE:

Regarding the demurrer to the declaration in this action as having been well taken, the court sustained it and entered a judgment of dismissal, to which the plaintiff obtained a writ of error.

Plaintiff's decedent, a child about eighteen months old, was run over and killed on the defendant's railway track leading from the mouth of the mine to the coal yard, by a train of empty cars pushed by an electric motor. Many of the numerous employees of the company, foremen, mechanics, miners, motormen, brakemen and other laborers resided in houses provided by the defendant on its property and situated near the mining railway track. In each of the four counts of the declaration, these facts are set forth in connection with the following allegation: "It then and there became and was necessary for such employees and their families to pass and re-pass over the property of the defendant and said railroad tracks in going from their homes to and from their work and to and from the offices and company store of defendant and pass and re-pass over said property of defendant and said railroad tracks for other purposes in the performance of their duties as such employees." The first count charges the defendant, through the action of the motorman in charge of its motor with four empty cars attached thereto, with having negligently and carelessly run over and killed the decedent; the second, negligence in the failure to maintain a lookout for persons rightfully on the track, including the decedent; the third, negligence in the failure to provide safe, sound and suitable machinery and appliances for the operation of the railway; and the fourth, negligence in the failure to keep a

76 W. Va

proper lookout, in view of the open and unguarded condition of the track.

The order of dismissal does not disclose the ground of the court's action, but it is said, in argument, the principle declared in *Martin* v. *Hughes Creek Coal Co.*, 70 W. Va. 711, was applied to the facts alleged and regarded as precluding recovery thereon. The facts susceptible of proper development in a trial under this declaration are very similar to those found in the Martin case. The child for whose alleged wrongful death that action was instituted was a member of a family living in a house about one hundred and fifty feet distant from the track. The miners lived in houses located on both sides of the track and their families visited across it. Here it is alleged the houses were located near the track and that the employees and their families of necessity passed over it, going from their homes to their work and the offices and store of the company and returning, and for other purposes in the performance of their duties as employees and servants. But, as the eighteen months old child for whose death this action was brought, could not have been a servant or employee having occasion to go to, and return from work, or any business at the company's store and offices, it was obviously not within the necessity predicated of employees and families, and the court properly tested the sufficiency of the declaration by the principle enunciated in the Martin case. If the declaration had made the use of the track an incident to the occupancy and use of the house in which the family of the defendant resided, or the track measurably an appurtenance thereto, and so brought it, expressly or impliedly, within the contract between the father of the child and his employer, the case would have fallen within the principle applied in *Smith* v. *Sunday Creek Coal Co.*, 74 W. Va. 606, 82 S. E. 608. But it does not do so. The necessity of use of the track is limited to persons going to and returning from work and business at the store and offices of the defendant. In the argument, the soundness of the conclusion announced in the Martin case is, therefore, correctly treated and regarded as the sole question raised by the demurrer.

Out of the dominion and use of private property incident to the ownership thereof, limited only by the right of the

property of others to freedom from injury by such use, springs the principle of immunity from liability for injuries to trespassers and bare licensees. Only upon the highest and most imperious considerations, is this right of dominion and use limited. The value of property lies in its utility. But for its varied uses and adaptability, it would be worthless. Freedom of use of property is property itself. It is an inherent element thereof. With great caution, therefore, courts and legislatures impose restraints upon its use and none are ever laid upon it without careful definition of their extent. *Powell* v. *Bentley & Gerwig,* 34 W. Va. 804; *Chambers* v. *Cramer,* 49 W. Va. 395; *McGregor* v. *Camden,* 47 W. Va. 193; *Wilson* v. *Pheonix Powder Co.,* 40 W. Va. 413; *Pope* v. *Bridgewater Gas Co.,* 52 W. Va. 252; *Coal Co.* v. *Conley and Avis,* 67 W. Va. 129; *Griffin* v. *Coal Co.,* 59 W. Va. 480; *Veith* v. *Hope Salt Co.,* 51 W. Va. 96; *Walker* v. *Strosnider,* 67 W. Va. 39, 67 S. E. 1087; *Fellows* v. *Charleston,* 62 W. Va. 665; *Fruth* v. *Charleston,* 75 W. Va. 456, 84 S. E. 105. Under the police power of the state, the legislature may impose limited restraints upon the use of private property, in the form of regulations thereof, and may authorize municipal corporations to do so, but the constitution itself withholds from the legislature power to deprive the citizen of his property or its use, except for public purposes and on payment of compensation. The common law imposes an obligation upon the property owner to use it in such manner as not to injure that of another person but this obligation is in favor of other property, not persons disassociated from the property. The stranger's right under this principle pertains to his property and the enjoyment and use thereof, not his person. *State* v. *Ehrlick,* 65 W. Va. 700. This right of dominion and use, however, cannot be made a shield or cover for malicious acts on the part of the owner. *Townsend* v. *Wathem,* 9 East. 281; *Conrad* v. *Railway Co.,* 64 W. Va. 176.

To strangers on their lands without right, owners owe no duty except abstention from intentional injury to them. Such persons are classified as trespassers and bare licensees. They cannot recover for injury by reason of excavations, defects in premises, contact with running machinery or the like, for the proprietor owes them no active duty. So long as he

does them no intentional injury, he is not liable for anything that may befall them. *Conrad* v. *Railroad Co.,* cited, *Smith* v. *Sunday Creek Co.,* cited, *Wilson* v. *Improvement Co.* 9 W. Va. 778, 787. Buswell, Per. Inj., Sec. 65; Biglow's Lead. Cas. on Torts, p. 697; note Kinkead on Torts Sec. 318. In its strictness, the rule of liability to strangers coming upon the property of the owner accords with the general principles above adverted to. Ordinarily only those who come upon his premises on business, in some sense of the term, may hold him to the duty of care and caution, for their safety. There must be an invitation to come upon some matter or occasion of material interest or benefit to him. Those who come for mere gratification of their own curiosity or other considerations exclusively personal to themselves are not within the protection of the rule. *Plummer* v. *Dill,* 156 Mass. 426; *Campbell* v. *Putnam Sugar Co.,* 62 Me. 552; *Parker* v. *Publishing Co.,* 69 Me. 173; *Componio* v. *Railroad* Co., 66 Conn. 528. In the absence of maliciousness or intentional injury, our decisions recognize no distinction between acts of commission and omission on the part of the owner, in cases of injuries to trespassers and licensees. *Conrad* v. *Railroad Co.,* cited; *Uthermohlen* v. *Bogg's Run Co.,* 50 W. Va. 457. In the former case, the injury was wrought by a turntable, when not running nor in actual use by the railroad company. In the latter, it was inflicted by a machine in use and running at the time of the injury. Nor is the obligation varied by the character of the trespasser. Infants stand on the same footing as adults.

From the operation of this general rule, no class of property owners other than railroad companies has been excepted; and it was extremly difficult to find any principle upon which they could be taken out of it, to the extent of requiring them to keep a reasonable lookout for trespassers and licensees on their tracks at places other than public crossings. This has been done, however, and, in justification of the court's action in doing so, Judge BRANNON said in *Gunn* v. *Railroad Co.,* 42 W. Va. 676, 680: "The public interest and necessity, not merely the company's, demand that the company have sole possession of its track; but, as people live and move along the route, they do go upon the track; children

in their thoughtlessness often wander upon it; and sheer necessity calls for such care as is exacted by the rule." Judge HOLT's observation upon the same subject, in *Gunn* v. *Railroad Co.*, 36 W. Va. 165, 175, is in part as follows: "Again, that some one shall always be on the lookout on a running train is, from its nature and as shown by experience, one of the most important safeguards; indispensable, in fact, for the passenger on the going train as well as the passenger on the coming train—for those off, as well as those on the train. The enforcement of such lookout is so imperative, on the ground of public policy, that the law may impose it as a duty, due to one who may himself be in the wrong." This denial to railroad companies of the immunity accorded by law to other property owners and imposition upon them of duties toward trespassers and bare licensees, to which other property owners are not subjected, are clearly based upon the peculiarities of their property, their methods of business and their relation to the public. Whether these facts, circumstances and considerations justify the discrimination, we need not inquire. it suffices to show that railroad companies, as property owners, have been put in a class distinctively their own."

The process of reasoning by which this discrimination has been effected cannot consistently be applied to coal companies. They owe no duty to passengers and shippers such as the exercise of care in the operation of their engines and appliances. They handle their own property and such loss as may be occasioned by unskillful or careless management of their works, is their own. No other person has any interest in it and it does not concern the public. They do not operate long stretches of track, running through all sorts of communities and exposed to constant invasion by trespassers and licensees. There is no substantial ground upon which their property and business can be distinguished from those of other companies and individuals generally. Any ground upon which they could be denied the immunity of the general rule would be applicable to all other classes of owners and result in the abrogation of the rule itself.

The fallacy of the argument in support of the writ of error lies in the assumption that every moral wrong is a legal

one, giving a right of action for damages. There is moral wrong, even cruelty and inhumanity, in the doing of many things which the law does not prohibit, and in the failure to do many things which the law does not require. Such acts and duties are not legally prohibited nor imposed, because to prohibit or impose them would be inconsistent with legal rights on the part of the actors which, in the opinion of mankind, it would be unwise to impair or burden, such as rights of property and personal liberty. The law does not assume to regulate, govern or control the conduct of men in all respects, but only so far as the common good is deemed to require it.

Our re-examination of the principle of the Martin case confirms and strengthens, rather than weakens, our conviction of its correctness. Hence, we affirm the judgment complained of.

*Affirmed.*