# CHARLESTON.

### MARTIN *v.* COAL COMPANY.

Submitted June 14, 1911. Decided January 23, 1912.

COAL MINING CORPORATION—*Operating Private Railway—Not Liable for Injury to Child on Track.*

A coal mining corporation operating on its own private premises a private railway for conveying cars to its tipple for loading, owes no duty to keep a lookout for children on its track, and is not liable for injury to a child from a moving car, its operator not seeing the child.

Error to Circuit Court, Kanawha County.

Action by Albert A. Martin, an infant etc., against Hughes Creek Coal Company. Verdict for plaintiff was set aside by the Court, and Martin brings error.

*Affirmed.*

*Cato & Bledsoe,* for plaintiff in error.

*Brown, Jackson & Knight,* for defendant in error.

BRANNON, JUDGE:

The Hughes Creek Coal Company is a private corporation engaged in Mining Coal, its works being on land owned by it on the line of the Kanawha & Michigan railroad. As a part of its operating equipment it has tracks for receiving empty railroad cars and loading coal, connecting with the said railroad, as a switch track, but on its own land. It had some empty cars standing on its track. The track had a slight down grade from a point

at the top of the grade called a knuckle, the point where empty cars stood. One of the company's employees, in order to take one of these cars from the knuckle to the coal tipple to be loaded from the mine, started it down the light one degree grade, it moving by gravity, and having started by prying it with a crow bar, he got on the rear end of the gondola car, and moved slowly, he says occupying him five minutes, to the front end where the brake was, the car moving slowly, at the rate of three or four miles an hour. The plaintiff, a child of twenty three months named Albert A. Martin, got out of the gate of the yard of its home went to this track, and in seeking to cross one of his arms was caught by the moving car and so badly mashed at the elbow that amputation of its arm was necessary. In an action brought by the child a verdict was found for him, which was set aside by the court, and Martin brings a writ of error.

The coal company upon its own premises was using the car in a lawful manner in the transaction of its business. The child had no right upon the railroad track, and was thus, in the eye of the law, a trespasser. It is not legally speaking harsh or unwarranted to denominate a child a trespasser under such circumstances; for he is on the property of others uninvited, where has no right to be; he is in law a trespasser, and the owner of the premises owes him no duty except not to wantonly or wilfully injure him. The same rule here applies to a child as to an adult. *Palmer* v. *Oregon Short Line,* 16 Ann. Cases 229; 4 Ann. Cases, note p. 680. In note page 247 are cited many cases for the proposition that "the recent cases adhere to the rule that railroad companies ordinarily owe no duty to children trespassing on their tracks, except the negative one not to injure them after discovering their presence." It owes no affirmative, positive duty. That great writer Thompson, in his work on Negligence, Vol. 1, secs. 1024, 1025, says, "As a general rule, he (the owner of premises) is not bound to keep his premises safe or in any particular condition for the benefit of *trespassing children* of his neighbor, or for the benefit of children who occupy no more favorable condition than that of the bare licensees." "The general rule undoubtedly is, that the owner or occupier of land is not bound to take pains to prepare his premises in any particular way, to the end of promoting the safety of children who may come thereon

as trespassers or as bare licensees; but that, as in the case of adults, they take the premises as they find them, and if they are killed or injured by reason of condition in which they find them, this does not give a right to an action for damages. Liability Extends only to Wanton Injuries. One doctrine under this head is that if a child trespasses upon the premises of the defendant, and is injured in consequence of something that befalls him while so trespassing, he can not recover damages, unless the injury was wantonly inflicted, or was due to the recklessly careless conduct of the defendant." Thompson personally criticises the rule, but says it is beyond question the established law. We held this same principle in *Uthermolen* v. *Boggs Run Co.,* 50 W. Va. 457, and *Ritz* v. *Wheeling,* 45 W. Va. 457, and *Conrad* v. *Railroad Co.,* 64 W. Va. 176, and *Dickens* v. *Liverpool Co.,* 41 W. Va. 511, cases of injury to children. In them is full discussion of this subject, and we shall not repeat their contents, or tediously elaborate. We assert that these cases do lay down principles which control the present case. As the law says that the coal company owed no duty to this unfortunate child, there could be no legal negligence; and where there is no negligence there is no liability. If the employee had seen the child and taken no care to save it, then we could say there was negligence in law, constituting wanton or wilful injury, and therefore legal liability under principles above stated; but the boy who was moving the car did not see the child. It is not proven or claimed that he did. He did not know that the child had been injured until the car reached the tipple, when he was told of the misfortune. The car started before the child reached the track. Just the distance from where the car started to where the child received its hurt is not certain, but from 75 to 90 feet. Bowers, the boy taking the car down, was not on the end of the car next to the child, where was the only brake, but at the rear end, seeming not to be intent on the brake, as the car was moving so slowly, and the tipple not reached. Why Bowers did not see the child may be that being on the back end of the car, and the box of the car being four boards high, 4½ feet from floor to top, he did not see it.

But though Bowers did not see the child, yet it is argued that he could and should have done so.

This is claim that the defendant was bound to keep a lookout for the child. This claim is repelled by authorities above, as they hold that as to either children or adults trespassing on private premises the owner owes no duty except not to wantonly injure after discovery of the presence of the child. Here I may cite a case very much kindred to this one as to the general principle above stated, and particularly as to the matter of lookout. It is *Emerson* v. *Peteler,* 35 Minn. 481. A contractor was grading a street for a city, and used dump cars in a street moved by gravity to carry away earth. Two children got on one of these cars, and when the cars were in motion a child of five years jumped off the car and was killed. The children were not seen. The court said, "The only ground upon which negligence is predicated is the failure to provide better police supervision of the movement of the cars in order to prevent children from boarding them. * * * * But we do not think the law required the defendant, under the circumstances, to provide police supervision to keep off intruders or trespassers from these cars, whether children or adults. He was engaged in improving the street, and his cars and track were lawfully in it for such purpose. * * * * Where there is no negligence, the incapacity of the child who happens to be injured cannot create liability. *Kay* v. *Penn R. Co.,* 65 Pa. St. 269, 271. The burden rested on the plaintiff to establish negligence, and it is not claimed that there was any, unless the failures to employ help to watch and keep children away was such. But the duty which the defendant owed these children was not to keep *constant watch,* or to use extraordinary care, to prevent their approach, but when discovered in the exercise of ordinary care, to use proper diligence to prevent injury to them." The court said, as I say in this case, that it was an instance of unfortunate accident imposing no liability on the contractor.

If these principles do not rule this case, what the use of private property? Its use is all there is of benefit in it, and if its use is to be so restricted where its benefit? It would be so narrowed. If this coal company could not freely use, on its own ground, this car in the necessary transaction of its work; if that use must be hampered by the duty of keeping a constant Argus-eyed watch, it would largely detract from and damage right of

private property. If these principles do not apply where is the limit?

It is contended that as the law of West Virginia requires public railways to keep a watch on the track to see children, the same reason called for a watch of the defendant's switch track. The preponderance of authority perhaps is that a railroad company is not bound to keep a watch for children on its track. *Palmer* v. *Short Line,* 16 Ann. Cases 228, and note p. 247; *Southern R. Co.* v. *Chatman,* 4 Ann. Cases 675 and note p. 680. But our law is different. *Gunn* v. *Railroad,* 42 W. Va. 676. However there is a difference in this respect between a public railroad and one of a coal operator used on his own premises for transacting his private business. The one is a public road, the other private. The public railroad train traverses great stretches of country, at great speed, the coal operator's cars go slowly a short distance. We know by judicial cognizance as a matter known of all men, that great numbers of people do walk on the public railroad track, and their presence on it in many instances may be expected; not so in the case of the private track operated in carrying on a coal mine.

We think on principles above stated that there was no error in giving the following instructions: No. 2. "The court instructs the jury that the burden of proving negligence is upon the plaintiff, and that the bare fact that the plaintiff was injured does not raise a *prima facie* presumption of negligence on the part of the defendant." No. 3. "The court instructs the jury that the defendant owed no duty to mere trespassers to keep its premises safe, and the fact that the trespasser is a child does not alter the duty owed to him." No. 4. "The court instructs the jury that the only duty owed by the defendant to the plaintiff was not to wantonly or wilfully injure him." No. 5. "The court instructs the jury that the defendant was not bound to take pains to prepare his premises in any particular way or the cars used thereon to the end of promoting safety of children who might come thereon as trespassers or as bare licensees, but that the plaintiff must take the premises as they were and as they were being used at the time he came on them, and if they believe from the evidence that the defendant, through its servants, did not wilfully or wantonly injure the plaintiff, then they must find for the de-

fendant." No. 6. "The court instructs the jury that the law is that the defendant owed to the plaintiff no higher duty or obligation than it owed to an adult who may have been a trespasser upon its premises, and that in order for the plaintiff to recover he must show by a preponderance of the evidence that Ed Bower the agent of the defendant company wilfully or wantonly caused the injury complained of in the plaintiff's declaration."

We think the court should have given instruction No. 1 as follows: "The court instructs the jury that the evidence in this case is not sufficient to support the verdict for the plaintiff, and they must therefore find for the defendant."

Under these principles we affirm the judgment of the circuit court granting a new trial.

*Affirmed.*

MILLER, JUDGE, with whom WILLIAMS, JUDGE, concurs, (*dissenting*):

I can not concur in the opinion of the court. In my view it is not supported either by our own cases or some of those cited in the opinion from other states.

The opinion overlooks very important facts, strongly bearing on the rights of the parties, and which can not be properly ignored in any just disposition of the case. The record shows that while the side track is located on the private grounds of defendant, it likewise appears that on each side of this side track, and the public road paralleling it on one side, and the railroad of the Kanawha and Michigan Company paralleling it on the other, defendant had built for the use of its employees some fourteen or fifteen dwelling houses; with some intervening buildings; and that west of these was its power house, and its tipple, and the railway station. The infant plaintiff lived with its mother and its grandfather, the latter an employee of defendant, in house No. 1, the westernmost of the mine houses, located on the north side of these tracks and the public road, and only about one hundred and fifty feet from the point on the side track where plaintiff was injured. All the other houses were occupied by families of employees of defendant company, some if not all of them, having small children, and of which defendant, as the evidence shows, had notice. The locations of these houses, opposite each

other, on either side of the public road and the railway tracks, was such as to put defendant on notice that the occupants of these houses would naturally, if not necessarily, cross the side track in visiting and communicating with each other. Besides there was some evidence of beaten paths across and upon the side track. Defendant had created these conditions at the place where plaintiff was injured, and thereby voluntarily assumed upon itself such duties and responsibilities as the law imposes, in operating its side track railroad.

The evidence moreover shows reckless disregard by the servant of the defendant in operating the car that injured plaintiff. He admits that before starting the car down the incline he took no pains to look ahead for objects on the track; that he got on the car at the rear end, and did not go in front where the brake was, or keep any kind of lookout ahead, and did not know that he had run over and injured plaintiff until after he had reached the coal tipple, although he was called to by the mother of the child, running towards it, in the direction of the moving car, from where she had been at work, at a neighbor's, on the south side of the track; and also by a Mrs. Canterbury, who had charge of the child, standing with another child in arms on the porch of house number 1, on the north side of the track; and urging on the pursuit by a small boy six years old sent by her to rescue the plaintiff from the impending danger. It is admitted that at the rate the car was moving it could have been stopped within from five to six feet, and the evidence of some of the witnesses is that plaintiff could have been seen on the track some ninety feet ahead of the car when it was started down the grade.

Under these facts and circumstances did defendant owe plaintiff no duty to keep a lookout? The opinion of the court answers, No, that the only duty owed him was the negative one not to wantonly and recklessly injure him, when discovered on the track. I can not so hold. The opinion concedes that this negative duty is not the full measure of responsibility of a railway company operating trains for long distances; that there is then a positive duty to maintain a reasonable lookout on its private right of way for helpless persons and dumb animals. So says *Gunn* v. *Railroad Co.*, 36 W. Va. 165; *Id.* 42 W. Va. 676, and *Bias* v. *C. & O. Ry. Co.* 46 W. Va. 349, and other decisions

of this Court. What reason or authority would excuse a coal company operating a side track through a village, as in this case, from keeping a reasonable lookout for helpless persons, though technically trespassers? If as our cases hold such a duty is imposed on a railway company running fast trains, the same duty may with greater reason it seems to me be required of a corporation operating a side track in a village, where it has reason to anticipate the presence of helpless persons. Its servants have no paramount duties to distract them, as in the case of trainmen operating fast running trains, at long distance.

The general rule, erroneously applied in the opinion, that the owner of private property owes no duty to a trespasser, though not controverted, I think inapplicable to the facts in this case. Nor in my opinion is its application here supported by our cases of *Ritz* v. *Wheeling, Dickens* v. *Liverpool Co., Uthermolen* v. *Boggs Run Co.,* and *Conrad* v. *Railroad Co.,* referred to. In neither of those cases, unless it be *Dickens* v. *Liverpool Company,* did the negligence of defendant relied on constitute active negligence on the part of defendant, as distinguished from passive negligence, particularly illustrated in the case of *Ritz* v. *Wheeling,* where the injuries were sustained by plaintiff through the condition of the premises, "without the immediate intervention of any human agency save his own." This distinction, though inapplicable to that case is clearly drawn in *Savannah, F. & W. Ry. Co.* v. *Beavers,* (Ga.) 39 S. E. 82, opinion by Judge Fish, a case quoted from and much relied on by Judge BRANNON in *Uthermolen* v. *Boggs Run Co., supra.* The fact that in the case at bar, as in *Gunn* v. *Railway Co.,* and other cases, defendant was charged with negligently bringing force to bear on plaintiff by a positive act done after his entry on defendant's premises—a negligent act of commission, is what distinguished this class of cases from those of passive negligence, where the injury is not the result of the immediate act of negligence of defendant. In *Dickens* v. *Liverpool Co.,* the proof showed that the child was injured on the private grounds of defendant, by being run over by a salt car drawn by a mule in charge of a driver, no lines being used. The driver was on a return trip from the salt shed to the salt house of defendant. The driver was on the car looking ahead, and as soon as

he discovered the child he called to the mule and did all he could to stop the car and save the child, and actually did get to it in time to save its life, but not in time to save the wheel of the truck from passing over its foot. How different that case is from this! I do not deny that there are many decisions supporting the opinion, some of them are cited. But this Court in the cases referred to is committed to a different rule.

The distinction I contend for is perhaps best illustrated by the case of *Smith* v. *A. T. & S. F. Rld. Co.,* 25 Kans. 738, a case practically on all fours with the case at bar, opinion by Valentine, Judge, concurred in by so distinguished a judge as Mr. Justice Brewer, late a distinguished member of the Supreme Court of the United States. That case distinctly holds that the question whether defendant was guilty of negligence in injuring the child on the track was a question of fact for the jury and not one of law for the court. The class of cases to which the opinion of the court would now commit us, as well as those of the *contra* class including our case of *Gunn* v. *Railway Co.* and *Bias* v. *C. & O. Ry. Co., supra,* are collated in a note to *Southern R. Co.* v. *Chatman,* 4 Am. & Eng. Anno. Cases 675, 680, and supplemented by a similar note to *Palmer* v. *Oregon Short Line R. Co.* 16 *Id.* 229, 247, both cited in the opinion of the Court. I refer to these notes. The rule of the *contra* class of cases is the reasonable and humane one. The other, when applied to cases like the one we have here, is cruel and inhuman, and a reproach to the law. I would reverse the judgment below, and enter judgment here for plaintiff on the verdict of the jury.