# CHARLESTON

## McGuire, Adm'r., *v.* Railway Co.

### Submitted September 9, 1910.    Decided March 26, 1912.

1. Railroads—*Operation—Persons on Track—Children.*
      In so far as it is consistent with their other duties in operating their train, it is the duty of both the fireman and engineer to keep a reasonable lookout for children of tender years, trespassing upon the railroad track. (p. 540).

2. Same.
      If a child of tender years is killed by a railroad engine, and

70 W. Va.

it appears that the child was on the track, or perilously near it, at a point where there was nothing to obstruct the view of the fireman, and far enough in front of the moving train for it to have been stopped, by exercising reasonable diligence, in time to prevent injury to the child, the failure of the fireman to observe the child until it is too late to stop before running upon it, is negligence, and such negligence is, in law, the proximate cause of the death, and the railroad company is liable, notwithstanding the engineer may not himself have been negligent. (p. 546).

3.  Trial—*Operation—Persons on Tracks—Instructions—Applicability to Evidence.*

An instruction is properly refused which would submit to the jury the question of the mother's imputed negligence, as affecting her right, as distributee, to recover for the negligent killing by a railroad company of her child two and a half years old, when the only proof of such negligence is the fact that the child, unattended by an older person, went upon the company's track, in a populous town, and was killed by a moving train. (p. 544).

4.  Appeal and Error—*Review—Questions of Fact—Conflicting Testimony.*

If the verdict rests upon conflicting testimony of witnesses, and there is sufficient evidence to support it, the court will not set it aside. The jury are the sole judges of the credibility of witnesses. They may believe one witness in preference to believing two, or more, who testify against him. (p. 541).

5.  Witnesses—*Impeachment—Right to Impeach One's Own Witness.*

A party who uses his adversary's witness to prove a certain fact makes him his own witness for that purpose, but he is not bound by his testimony on cross-examination, in respect to other matters concerning which he was not examined in chief. As to such new matter the witness becomes the witness of the cross-examiner. (p. 543).

(Brannon, President, absent).

Error to Circuit Court, McDowell County.

Action by J. G. McGuire, administrator, against the Norfolk & Western Railway Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Wyndham Stokes* and *J. Graham Sale,* for plaintiff in error.

*Harold A. Ritz* and *Cook, Litz & Howard,* for defendant in error.

Williams, Judge:

J. G. McGuire, administrator of Juanita Hunt, recovered a judgment for $2,000 against the Norfolk & Western Railway Company for negligently causing the death of his intestate, and defendant has brought the case to this Court on writ of error. The principal errors assigned relate to the sufficiency of plaintiff's evidence to support the verdict, and to the action of the court in refusing to give certain instructions asked for by the defendant.

Plaintiff's intestate, a child two and a half years old, got upon defendant's railroad track in the town of Welch, and was killed by an engine and train in charge of defendant's servants. The record presents these questions, viz: Did the engine crew keep a proper lookout for helpless and irresponsible trespassers on defendant's tracks, and if not, was their failure to do so the proximate cause of the child's death? Defendant's liability depends upon a proper answer to these questions, because it is the well settled law of this state, that the engineer and fireman must keep a reasonable lookout for children and helpless trespassers upon the track. *Gunn* v. *Railroad Co.,* 42 W. Va. 676; *Dempsey* v. *Railroad Co.,* 69 W. Va. 271, 71 S. E. 284.

Jim Brown, a witness for plaintiff, is the only witness who locates definitely the place where the engine was at the time the child came upon the track. He was hauling a load of goods from the depot, and was at a point forty-nine feet from the place where the child was hit by the engine. From his position he could see both the engine and the child, and, seeing the child's danger, he hallooed to the trainmen, and not attracting their attention, he says he jumped from his wagon and ran to the track to rescue her, and reached it in time to save another child that was on the track about eight or ten feet from the child that was killed. He also succeeded in catching hold of Juanita Hunt's hand, but not until it was too late to save her. The wheels of the truck caught her. He says that he himself was struck by the cylinder of the engine and thrown down. On the day before the case was tried, he pointed out to W. C. Morgan,

a civil engineer, the place where he was standing, and the respective points on the track where the approaching engine and the deceased were, when deceased came upon the track. Mr. Morgan measured the distances between the points, shown him by Brown, and testifies that the two points on the railroad track measured one hundred and twenty-five feet apart. It is proven, and not denied, that the train was running at a rate of speed not exceeding, in the opinion of any witness, ten miles an hour, and could have been stopped in a distance of from sixty to eighty feet, and it is proven that it was in fact stopped, after the brakes were applied, in a distance of seventy feet. Therefore, if the engineer had seen the child when she first came upon the track, and had used diligence to stop his train, he could have done so before striking her. But, for some distance along the railroad, in both directions from the place of accident, the track curved to the left. The engineer's position was on the right hand side of the engine, which placed him on the outside of the curve, and made it impossible for him to see the track very far ahead. He testified that he was at his place of duty in charge of his engine, that on account of the curvature of the track the front of his engine obstructed his view along the track and that he did not see the child until after his engine had struck her. There is no evidence that he could have seen the child from his position on the engine, in time to stop his train. There is some evidence, however, tending to prove that he was not on his engine at the time. Jim Brown says that, after the train stopped, he saw the engineer come out of one of the coaches. He also says that, when he first saw the child on the track, he looked toward the engine and hallooed, but could not see the fireman, whose place on the engine was on the inside of the curve and nearest to witness. But Brown is contradicted by both the engineer and the fireman who testify that they were in their respective places on the engine. The fireman says he first saw the child as the engine was crossing Wyoming street. That is shown to be about seventy feet from where the child was struck. It is proven that, from the fireman's place on the engine, he had an unobstructed view along the track, ahead of the engine, for a distance of over four hundred feet.

There is irreconcilable conflict between the testimony of Jim

Brown and Jesse Mathews, witnesses for plaintiff, on the one hand, and the fireman and engineer, witnesses for defendant, on the other. Consequently, if the facts testified to by Brown and Mathews are sufficient to prove negligence on the part of defendant company, then we have no right to disturb the verdict, because the question of the credibility of witnesses is a matter solely for jury determination. It was the duty of both engineer and fireman to keep a reasonable lookout for children and other helpless tresspassers upon the track, so far as it was consistent with their other duties in the running of the train. They both say they were at their respective places on the engine, and the fireman says he was keeping a lookout. But they are both contradicted by the facts, as they are made to appear from the testimony of witnesses Brown and Mathews. These witnesses say the fireman was not in his place on the engine, that his window of the cab was next to them, and in plain view and that they looked and could see no one on the engine. Brown also says that after the train had stopped, the engineer came out of one of the coaches. If this statement of Brown's is true, it tends to prove that the fireman was the only one on the engine, and that he was on the opposite side, running the engine in the engineer's stead, and was in a position where he could not see the tracks in front of him, on account of the curve in the track. But, in any view, their testimony, if true, proves that the fireman was absent from his usual place on the engine at the time of the accident. The fireman says he got in the engine cab as the train was crossing the bridge, and when asked why he did so, replied that it was "necessary for a man to be on the lookout coming into Welch or any passenger stop, as you can not tell who may be on the track or anything else." Here we have an admission of what his duties were, at the time of the accident. The question is: Did he perform them? If he did, the killing of plaintiff's intestate was an unavoidable accident. If the fireman and engineer performed their duty, it follows, as a matter of course, that the accident was unavoidable, and defendant is not liable. But in view of the conflicting testimony of witnesses it was for the jury to say whether they were in their respective places on the engine. In view of the fact that the engine was approaching the depot in a populous town, on a curve

in the railroad track which cut off the engineer's view of the track to a considerable extent, it was incumbent on the fireman to keep a more careful lookout than would be required of him under different conditions.   According to Brown's testimony, corroborated by Mathews, the fireman could have seen the child on the track for a distance of one hundred and twenty-five feet, if he had been at his post of duty and had been looking out; and, according to the undisputed proof, the train was stopped in a distance of seventy feet after the brakes were applied.   The testimony of Brown and Mathews, supplemented by the actual measurements made by the civil engineer Morgan, proves that the engine was one hundred and twenty-five feet from the child when she first came upon the track, within plain view from the fireman's place on the engine.   Therefore, according to the law, as applied in *Gunn* v. *Railroad Co., supra,* and *Dempsey* v. *Railway Co., supra,* the jury were justified in finding defendant guilty of negligence, and we have no right to disturb their verdict.   There is conflict in the testimony of the witnesses, and the jury had the right to believe Brown and Mathews, and to disbelieve the engineer and the fireman, and we have no right to say that they were wrong.   The fact that Brown had made an affidavit before the trial, describing the manner of the accident, which in some respects differs from his testimony before the jury, was a matter affecting his credibility only, and was a matter which, no doubt, the jury considered and passed upon.

Plaintiff examined G. W. Thomas, the engineer, to prove two facts, viz:   (1)   In what distance he could have stopped his train, and (2) in what distance he did actually stop it, at the time of the accident.   His answers to these questions are not inconsistent with the facts testified to by other of plaintiff's witnesses.   But, on cross-examination, he was asked to tell when he first saw the child on the track, and all he knew about how she was killed.   Many of the facts related by him are contradictory of the facts testified to by Brown and Mathews, and it is insisted by counsel for defendant that plaintiff is bound by that testimony.   Such is not the law.   By placing the engineer on the stand in his own behalf, plaintiff no doubt vouched his credibility and would not be permitted to impeach his general character for veracity.   *Lambert* v. *Armentrout,* 65 W. Va. 375; 30

A. & E. E. L. 1128; 1 Greenl. on Evi., sec. 442. But he is not prohibited from proving the truth of any particular fact by some other witness, although it may be in direct contradiction of what such witness may have testified to. Authorities, *supra*. 1 Greenl. on Evi., sec. 443. But defendant did make the engineer its own witness to prove many of the facts testified to by him on his cross-examination; and, as to matters in relation to which he was not examined in chief, plaintiff did not make him his witness, and is not bound by his testimony in relation thereto. He was not offered as a witness by plaintiff for the purpose of proving them. As to such new matter, brought out by cross-examination, the witness became defendant's witness. *Hollen* v. *Crim & Peck,* 62 W. Va. 451.

The court refused an instruction asked for by defendant which would have told the jury that there can be no recovery for the death of an infant of Juanita Hunt's age, when it appears that the negligence of the custodian of the child contributed to its death. Without going into the intricate question of imputed negligence, about which there is so much conflict in the authorities, we may, nevertheless, say that the instruction was properly refused, in this case, because there is not sufficient evidence to prove that the mother of the child was negligent in permitting it to get upon the railroad track. It does not appear how far the mother lived from the point where the child was killed, nor how long the child had been out of her presence. True, witness Brown does say that he saw her outside of her mother's yard, at other times, and that Juanita and the other child that he rescued were nearly always together. It is scarcely possible that a mother would be able to keep her eye upon her child, all the time, and it would be unreasonable to hold her guilty of negligence for not doing so. Common observation and experience teach us that children of two and a half years of age often get out of the sight of their parents, or custodians, and the fact that Juanita Hunt did, on this occasion, get out of her mother's sight, and upon the railroad track, is not, of itself, sufficient proof of negligence to warrant the instruction, even if it be the law that the negligence of the custodian of the child is attributable to the child. *Dempsey* v. *Railway Co., supra.; Gunn* v. *Railroad Co., supra.* The child itself was of too tender

years to appreciate its danger, and the law, of course, imputes no negligence to it. Moreover, it does not appear that the child's mother is its sole distributee. She was married, and it appears that her husband was the child's step father. It does not appear that the child left no brothers and sisters, who would be joint distributees with its mother. And, even granting that the law does, in case of the contributory negligence of a parent who is the custodian and sole distributee of the child, prevent recovery, the query arises, would such negligence of the custodian prevent recovery by the other joint distributees, to whom the law certainly imputes no negligence? One of the principal reasons assigned for applying the doctrine of imputed negligence by the courts that have applied it, is, that, under the statute known as Lord Campbell's Act, the recovery for the wrongful death of a person is for the benefit of the distributees of the deceased, and not for the benefit of his estate, and that, to permit a distributee to recover for the death of his child, caused by the negligent act of another, to which his own negligence had contributed, would be to permit him to profit by his own wrong, and would encourage negligence. But this reason can certainly have no application to infant distributees of tender years. If, therefore, there were other distributees besides the mother, who under the law share equally with her, would the mother's imputed negligence, if proven, defeat their right to recover? We suggest the question, but do not decide it.

The law imposes a greater duty upon railroad companies to keep a lookout for small children trespassing upon its tracks than it does in case of adult persons in full possession of their faculties. It owes to the former the duty to keep a reasonable lookout for them consistent with the other duties of its employees engaged in the operation of its trains, and if children are discovered upon the tracks, or perilously near the same, the company's servants are bound to exercise reasonable diligence to avoid injury to them. Defendant's instruction No. 7 was, therefore, properly refused. By it defendant asked the court to apply the same rule to the infant deceased that the law applies in the case of an adult trespasser.

Defendant's No. 8 was also properly refused. By implication it would limit the duty of keeping a lookout for helpless

trespassers on the track, to the engineer only. The duty to keep such lookout rested on the fireman as well as on the engineer, and, in this particular case, it would appear to be more the duty of the fireman than it was of the engineer, for the reason that the fireman's position afforded him a commanding view of the track, while the engineer's position did not afford such view to him. Moreover, the train was approaching the depot in a populous town, where, as the evidence shows, the tracks were much used by pedestrians. Under such circumstances, reason requires that the fireman should keep a more careful lookout than would be necessary at a place where pedestrians might not be expected to be upon the track.

Plaintiff's instruction No. 1 is consistent with the law herein stated, and was properly given. It reads: "The Court instructs the jury that if the employes of a railroad company fail to keep a proper lookout consistent with their other duties for helpless trespassers on the track, and thereby such helpless trespassers is negligently killed, such failure is the approximate cause of such killing, and the Company will be liable therefor, notwithstanding the prior negligence with which such helpless trespasser may be on the track." It is argued by counsel for defendant that the failure to keep a lookout was not the proximate cause of the child's death but that the failure to stop the engine in time to avoid injury was the proximate cause. The law does not regard so fine a distinction. Failure to keep a reasonable lookout is the negligent act established by the evidence. It matters not how diligent the engineer and fireman may have been to stop the train after the child had been discovered, if, by failure to keep a proper lookout, they did not discover her in time to stop before running upon her. If it had been proven to the satisfaction of the jury, that defendant's servants, by the exercise of reasonable diligence, could not have discovered the child, in a place of danger, in time to have prevented her injury, then, of course, the failure to stop before running upon her would not, alone establish negligence. Logically, running over the child with the engine caused her death, this resulted directly from the failure to stop in time, and the failure to stop in time was due to the fact that the child was not discovered, and finally, the failure to discover her was due to the negligence of those in

charge of the engine, in not keeping a reasonable lookout. All these several subsequent acts and occurrences follow so closely upon, and are such natural and inevitable consequences of the original act of negligence, to-wit, the faliure to keep a reasonable lookout, that the law does not regard them as having any casual relation. The law looks to the last negligent act which caused the injury, as the proximate cause, and disregards all intervening acts and occurrences which are the natural and immediate consequences flowing from it. Hence, if the jury believed that defendant's servants were negligent in failing to see the child when she came upon the track, when the engine was far enough away from her to have been stopped before striking her, all of which they had a right to believe from the evidence, then no amount of diligence, exercised after they actually discovered her on the track, could relieve defendant from liability.

The judgment will be affirmed.

*Affirmed.*