# CHARLESTON.

STUCK v. KANAWHA & MICHIGAN RAILWAY CO.

Submitted May 17, 1915. Decided June 1, 1915.

1. RAILROADS—*Duty of Trainmen—Trespassers.*

It is the duty of those in charge of the running of a railway train to keep such lookout ahead for trespassers upon the right of way as is reasonably consistent with the proper performance of their other duties in running the train. (p. 455).

2. SAME—*Duty of Trespassers.*

A railway company owes duty to trespassers discovered on the right of way, to take such reasonable precaution for their safety as the circumstances allow, even though they are primarily negligent in being on the right of way. (p. 455).

3. SAME—*Trespassers—Duty of Engineer.*

Though a trespasser on a railway right of way may not be directly on the track, yet if when the train reaches him he will be in a position of peril therefrom, it is the duty of the engineer to take such precaution for his safety by signal or otherwise as the circumstances reasonably dictate. (p. 456).

4. SAME.

Where a railway engineer observes a trespasser walking along a foot path at the end of the ties with his back to the approaching train, and it is apparent that when the train reaches the pedestrian he will be caught in a space no more than four feet wide between the swiftly moving train and a line of box cars standing on a side track, it is negligence for the engineer to give no signal by bell or whistle of the approach of the train so that the pedestrian may have opportunity to protect himself or seek safety before he is placed in such perilous position. (p. 456).

5. SAME—*Person Near Track—Duty of Engineer—Signal.*

When a boy apparently oblivious to the approach of a train, though of the appearance of self responsibility, is discovered on the railway track, or in perilous proximity thereto, the engineer may not in reason assume that he will protect himself without signal from the approaching train. (p. 459).

6. NEGLIGENCE—*"Proximate Cause."*

The proximate cause of an injury is the superior or controlling agency from which springs the harm, as contradistinguished from those causes which are merely incidental or subsidiary to such principal and controlling cause. (p. 461).

Error to Circuit Court, Kanawha County.

Action by Edward Stuck, an infant, who sues, etc., against the Kanawha & Michigan Railway Company. Judgment for defendant, and plaintiff brings error.

*Reversed, and new trial awarded.*

*Cato & Bledsoe* and *A. M. Belcher,* for plaintiff in error.

*W. N. King, Leroy Allebach,* and *Norton Monsarat,* for defendant in error.

ROBINSON, PRESIDENT:

The action is on the part of an infant to recover from a railway company damages for personal injury. The trial court excluded plaintiff's evidence, directed a verdict for defendant, and entered judgment of nil capiat thereon.

The injury occurred while plaintiff was walking along a path between the main line and a siding, within the corporate limits of the city of Charleston. At the time, plaintiff was nine years and eight months old. He and a number of other boys had been playing marbles on a public road near the railroad. From the game of marbles he had started to go to his home on Bigley Avenue, which is crossed by the railroad. His brother, two years older than himself, accompanied him. Instead of going by way of the Crescent Road, which parallels the railroad and is a little farther, they went upon the path between the siding and the main line of the railroad. This path was much used by the public. Plaintiff was walking southward along the path when a southbound freight train, running at the rate of thirty-five or forty miles an hour, came up behind him. He was oblivious of the coming of the train when it overtook him. A string of box cars standing on the siding left a clear space of only four feet between him and the swiftly moving train. The engine and about three box cars had passed him when his head came in contact with a door of one of the cars, which was loose at the bottom and swung out. He was knocked down and run over, his right leg and left arm cut off, and his head injured. No warning from the engine was sounded by bell or whistle, to apprise plaintiff of danger, before he was overtaken. Yet

in the train's approach to the point where plaintiff was over-taken the track was straight for thirteen or fourteen hundred feet, affording the engineer view ahead for that distance. When plaintiff was struck his brother was some distance in advance of him and had passed beyond the box cars and stepped over onto the side track. He says he heard the rumbling of the train and looked back to see where plaintiff was, just in time to see the latter struck by a box car door. Do these facts, which were uncontradicted before the jury, make out a prima facie case of negligence on the part of defendant entitling plaintiff to recover? We are of opinion that they do.

Whatever may be the rule in other jurisdictions, it is settled law in this State, concerning the operation of trains, that it is the duty of those in charge of them to keep a reasonable lookout for animals and persons trespassing upon the tracks. This does not mean that they are bound to keep a constant watch, but only a reasonable lookout along the track, consistent with the proper performance of their other duties in running the train. And the rule seems to be applicable, as well in the case of adult trespassers in full possession of all their faculties and physical powers, as in case of infants of tender years, disabled persons, and dumb animals. *Spicer* v. *Railway Co.*, 34 W. Va. 514; *Raines* v. *Railway Co.*, 39 W. Va. 50; *Gunn* v. *Railroad Co.*, 42 W. Va. 676; *Dempsey* v. *Railway Co.*, 69 W. Va. 271; *McGuire* v. *Railway Co.*, 70 W. Va. 538. In view of this duty, imposed by law, it is a reasonable inference to be drawn from the facts that the track was straight for at least thirteen hundred feet between plaintiff and the approaching train, that the engineer or the fireman saw plaintiff, or by the exercise of reasonable diligence could have seen him.

It is certainly true that plaintiff was a trespasser on the railway right of way, but it is the accepted law of this jurisdiction that a railway company in the swift running of trains owes duty to see trespassers. Herein is differentiation from the general rule of duty to trespassers. In *Raines* v. *Railway Co.*, *supra*, this court held: "If those running a railroad train discover a trespasser in imminent danger on the track, they must use all reasonable exertions to avoid

inflicting injury; otherwise, the company will be responsible." And kindred to this is the remark of Judge DENT, in *Davidson* v. *Railway Co.*, 41 W. Va. 407.: "All trespassers in dangerous situations are guilty of negligence, yet if, by ordinary care on the part of those knowing the danger, it can be averted, it is their duty to exercise such care in tender consideration of human life."

If plaintiff had been walking on the track instead of so near to the side of it, apparently oblivious of the approach of the train as the evidence shows he was, our cases unquestionably establish that it would have been the duty of the engineer to take reasonable precaution for his safety. Of course what the precaution should be must be judged in each case by its particular circumstances. "Each case must depend upon its own facts in determining what shall constitute ordinary care or reasonable prudence in the running of a railroad train." *Raines* v. *Railway Co., supra.* The only distinction in this case from those in this court heretofore dealing with duty of a railway company to see trespassers is that here plaintiff was not directly on the track. This is a distinction in fact. Is it in principle? Does the duty arise merely from a particular physical position, or from the imminence of danger? In reason, plainly the latter. It is not enough to say that the trespasser was not directly on the track and therefore no duty was due to him. If he is where there is danger to him from the running of the train, the duty is certainly the same. The duty, if flowing at all from the particular circumstances of a case, flows out of the imminence of danger from the train, whether from the pilot of the engine, from the side of the cars, or otherwise. Will the train hurt the trespasser? That is the question which confronts the engineer. The law tells the latter what he must do. Its rules in such case are only the rules of natural reason. They vary with particular circumstances. If a duty to a trespasser on a railway right of way arises in a particular case, it is not that the engine shall not strike him, but that he shall not be hurt by the running of the train. What difference as to result is there in running a train so close to a man that he is injured thereby, and in running it directly on him? True, there may be less imminence of danger from the former than

from the latter. But if the danger from the former is reasonably apparent, the duty to protect is the same in either case. Take the case of a man caught in a long, straight, narrow cut, standing as best he can to avoid the train. May the engineer proceed simply because he knows the engine will pass the body of the trespasser? Must the engineer not remember the swinging of cars and the inabilty of human nerves always to stand such perilous position? Reason in such case will dictate his duty. He must do what he can to prevent that which he knows is fraught with danger. His duty in such case is not simply not to injure, but not to risk the life of the trespasser. Though the trespasser is first at fault, the engineer has the last clear chance to avoid the injury that seems probable from the risk. If the latter does not hearken to the duty which reason dictates and injury comes therefrom, it may be for a court or jury to say how he acted in the premises.

The case which we have surmised is an extreme one, but it illustrates that there is a duty to a trespasser, if discovered in time, not unreasonably to risk his life and thereby cause him injury. Has not the engineer who risks the life of a person to the injury of the latter, when it was reasonably possible to avert doing so, caused the injury by being the author of the risk? The possibility that the risk may not harm, will not excuse the hazard if it does harm. One may as well be injured by a gun carelessly handled by another, as by the unassumed risk of his life in the hands of another. The bullet of the first, as well as the peril of the other, may miss, but if either strikes, it is not different in its relation to neglect of duty.

We do not think this case can be so distinguished as to make well settled principles in relation to a trespasser directly on a track, inapplicable hereto. Did the engineer so fail to observe a duty to plaintiff that it caused injury to the latter? From the evidence it is clear that plaintiff by the act of the engineer was placed in a perilous situation. He was caught in between one of the long string of box cars standing on the side track and a heavy train going at the rate of thirty-five or forty miles an hour. And from the evidence it is uncontradicted that this boy less than ten years old was placed in

such position suddenly and without warning to him. He did not knowingly assume the position. His own and other testimony establish that the train came down upon him unawares, without signal or warning of its approach. He had not even heard its rumble. If he had been warned by the engineer in time, as it appears he could have been, before the swiftly moving train overtook him, he would have had opportunity to escape from hemmed in proximity thereto. Yet the evidence is uncontroverted that not a signal came from the train—that it appeared suddenly, without warning of its approach.

The decision in *Kelley* v. *Railway Company,* 58 W. Va. 216, announces the rule of duty applicable to the facts and circumstances of this case: ''When the trainmen see a person walking on a railroad track they must give him an alarm signal at such distance before reaching him as will enable him to hear it and get off the track. Until such alarm is given they cannot act on the assumption that he will get off the track.'' In the course of the opinion Judge BRANNON said: ''Whatever be the duty of the railroad company's agent to keep a lookout to discover persons on the track, certain it is that when the trainmen have discovered a human being on the track, and in danger, they must give him warning of the train's approach, such a warning, by whistle or bell, at such a distance before reaching the trespasser, that he will be able to hear, take a thought for his safety, and get off the track. Common humanity demands this. True, he is a trespasser and in the wrong; but though every man who uses the railroad track as a footway is committing a trespass, has placed himself within the precincts of danger where he has no right to be, and is guilty of gross negligence, yet people do walk upon railroad tracks, and the law, from sheer necessity, has established the rule, applicable not only to railroads, but generally applicable, that it is the duty of one from whom the injury comes that he shall, when he sees a man in danger, use reasonable care, take reasonable steps, reasonable under the circumstances of the particular case, to save the man in danger. He cannot punish the trespasser for his wrong. It is a condition not a theory. He cannot thus himself be guilty of a great wrong. He must help his perishing brother by

doing what he reasonably can to warn and save him. These men were absent minded in conversation. Some become listless and abstracted in mind; they are entitled to warning; at any rate so the law is. Under this principle it is the duty of a railroad company, it was the duty of the defendant in this case, to blow an alarm with its locomotive, at a point far enough from Kelley to reach his ears, allowing him to realize his danger, and take steps to save himself from the rushing deadly locomotive.'' In sound sense, the principle of duty so tersely explained by our late and ever revered associate, can not be said to be inapplicable simply because the trespasser is not directly on the track, if he is so near thereto and will be so cut off from escape when the train reaches him as to make his position one of deadly peril from the train. As we have said, it is *peril,* and that which follows peril, if Providence does not intervene, *injury,* which the engineer must reasonably in duty guard against; not the mere colliding of the trespasser and the pilot of the engine. So, applying the principle to this case, we must hold that it is negligence for a railway engineer, observing a trespasser walking along a foot path at the end of the ties with his back to the approaching train, and it being apparent that when the train reaches the pedestrian he will be caught in a space no more than four feet wide between the swiftly moving train and line of box cars standing on a side track, to give no signal of bell or whistle of the approach of the train so that the pedestrian may have warning to protect himself or seek safety before he is placed in such perilous position.

If warning had been given, plaintiff might have heeded and sought safety by going in between the box cars. An able adult under such circumstances would have been guilty of contributory negligence in not doing so. His would have been the last clear chance, and his remaining after being warned of the danger would have been the cause of his injury. But plaintiff is a boy. It may be different as to him. Ordinarily the degree of care to be required of a child, placed in circumstances of danger, is to be determined by considering the maturity and capacity of the child in relation to the circumstances of the case, and is a question for the jury. Wood on Railroads, sec. 320; Buswell on Personal Injuries, sec.

148. How much like a boy nine years of age it is to brave perilous dangers. His discretion is not matured. He is prone to do things no man would do. Sometimes in his desire to be a man, he oversteps the mark. But the case does not call on us to decide, even if it were our province to do so, whether plaintiff was guilty of contributory negligence in not availing himself ·of a last clear chance of avoiding· the hemmed in position that came to him. No last clear chance to avoid it was given him. The evidence tells us that he was caught between one of the long line of box cars and the flying train before he knew that such position was coming to him. Granting that he had the age and intelligence to choose between danger and safety, we must observe that no opportunity to do so was given to him. If the boy's failure to answer warnings from the engine, his youthful appearance or other circumstances, had reasonably indicated to the engineer that he did not have such inteligence, then it would have been the duty of the engineer to stop the train if that could be done in time to avoid the peril. 2 Thompson's Commentaries on Negligence, sec. 1738. But, from the evidence, the engineer was wholly derelict. He did nothing either to warn the boy or to test his discretion as to safety. It was plainly the engineer's act that was the last to subject plaintiff to the risk that caused his injury. That act was the sudden hemming in of plaintiff in a perilous place. It is only the result of reason to say that when a boy apparently oblivious to the approach of a train, though of the appearance of the age of self responsibility, appears on a railway track, or in perilous position thereto, the engineer may not assume that he will protect himself without signal.

It has been suggested that when the engine passed plaintiff, he had warning of his peril, and that then his duty was to take refuge somewhere away from the narrow space between the cars—that his remaining between the cars was the last act of negligence causing his injury. This does not accord with reason. Such a bewildering and perilous place, with the confusing noise and sweep of the train, is a poor place for a boy of nine years to think and act discreetly. The shock of being suddenly thrust into such a situation is not promotive of thought to anyone. Besides, the third or fourth car from

the engine struck plaintiff. Remember the speed of the train. How much time had he to think and act discreetly? How much of thought towards safety would even an adult have had time to apply? We know in human experience that it was only an instant—scarcely time to turn from one's walking position. Plaintiff was knocked down without being given time to seek safety.

Again, it is said that a loose door on one of the cars of the train, the condition of which the company could not reasonably know, caused the injury. The answer to this is that the loose door would not have struck plaintiff if defendant's servant had not subjected him to the peril of the same. A loose door, or other protruding object, is no unusual incident to a swiftly moving train. The loose door was by no means the proximate cause of the injury. It was harmless except in connection with the real proximate cause, the act of the engineer in failing to observe his duty toward plaintiff. The door was only an incident of the peril of which the engineer was the author. "The proximate cause is the superior or controlling agency as contradistinguished from those causes which are merely incidental, or subsidary to such controlling or principal cause." *Snyder* v. *Philadelphia Co.*, 54 W. Va. 149.

There being evidence of negligence, it was of course error to exclude the same and to direct a verdict for defendant. The judgment will be reversed, the verdict set aside, and a new trial awarded.

*Reversed, and new trial awarded.*