VIRGINIAN RAILWAY COMPANY, a
corporation, Appellant,

v.

James Ernest ROSE, an infant, by Ernest Rose, his next friend, and Ernest Rose and Janice Rose, Appellees.

No. 7796.

United States Court of Appeals
Fourth Circuit.

Argued March 10, 1959.

Decided May 16, 1959.

Fletcher W. Mann, Beckley, W. Va., for appellant.

W. A. Thornhill, III, Beckley, W. Va. (W. A. Thornhill, Beckley, W. Va., on the brief), for appellees.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BOREMAN, District Judge.

SOBELOFF, Chief Judge.

The defendant railroad company appeals from adverse judgments entered in the District Court in favor of James Ernest Rose, an infant, for personal injuries, and in favor of his parents for medical expenses and loss of their son's services.

The defendant operates a single track railway through Wyoming County, West Virginia, which crosses a bridge, or trestle, located on the perimeter of the Town of Pineville, having a population of about 1800. The structure is 123 feet long, is 24 feet above a creek and has an eight degree curve to the right. On the afternoon of May 15, 1957, in clear weather, Jimmy Rose, then 9 years and 8 months of age, was fishing from the trestle. Feeling "the track vibrating" and hearing "some wheels squeaking," he looked up and saw a train approach-

ing. The train "wasn't too close," and as Jimmy ran to get off the trestle, his foot got "hung" in a crack between the ties. When he pulled his foot out he was hit by the defendant's train, carried 50 feet beyond the end of the bridge, and thrown off the track. The engineer did not see him and had no knowledge of the accident until signalled by a dispatcher one mile beyond the point of impact to stop the train. The train's speed was 12 to 14 miles per hour. Although the engineer stated in his deposition that his view of the trestle was blocked by the 49 foot hood of the locomotive, there was ample competent testimony and physical fact from which a jury could find that the engineer, if he had been looking, could have seen the plaintiff in time to stop the train and avoid the accident.

The injuries included the loss of one leg and most of the right arm. The boy has had to undergo numerous operations and now uses artificial limbs. The jury returned a verdict of $150,000.00 for him and $17,500.00 for his parents.

## I.

■ The boy was admittedly a trespasser on the defendant's railroad trestle. The jury was instructed that those who are in charge of trains have the duty to keep a reasonable lookout for children trespassing on the tracks, not a constant lookout but "a reasonable lookout consistent with the proper performance of their other duties in running the train"; and that the duty varies with the circumstances at the time and place of the accident, the duty being slight "if the place is remote and persons are not known by the train crew to use the track or ordinarily expected to be on it," and increasing "in degree in proportion to the density of population [and] the forseeable probability of persons being on the track." Under this instruction the jury could reasonably conclude that the railroad was negligent in not maintaining a proper lookout, for testimony by numerous persons revealed that the area around the trestle was popular for fishing and that they and others had fished from the bridge.

However, the defendant contends that the law in West Virginia is contrary to the court's instruction in that no duty is imposed upon a railroad to maintain a lookout for trespassers. As to such persons, it is argued that a duty arises only *after* they are actually discovered on the tracks, the duty then being to refrain from inflicting wilful or wanton injury. The Supreme Court of Appeals of West Virginia appears to have developed simultaneously two doctrines as to a railroad's duty to persons injured at a place other than a public crossing. The defendant relies on the line of cases—all involving adult trespassers—which hold that the railroad owes a duty no higher than not to injure them wilfully or wantonly after they have been discovered on the tracks. Raines v. Chesapeake & O. Ry. Co., 1894, 39 W.Va. 50, 19 S.E. 565, 24 L.R.A. 226; Huff v. Chesapeake & O. Ry. Co., 1900, 48 W.Va. 45, 35 S.E. 866; Ballard v. Charleston Interurban R. Co., 1933, 113 W.Va. 660, 169 S.E. 524; Barron v. Baltimore & O. R. Co., 1935, 116 W.Va. 21, 178 S.E. 277; Connelly v. Virginian R. Co., 1942, 124 W.Va. 254, 20 S.E.2d 885; Hall v. Monongahela West Penn Public Service Co., 1946, 128 W.Va. 547, 37 S.E.2d 471; Payne v. Virginian Ry. Co., 1948, 131 W.Va. 767, 51 S.E.2d 514; and Stokey v. Norfolk & Western Ry. Co., 1949, 132 W.Va. 771, 55 S.E.2d 102. Several of these cases (Raines, Huff and Payne) are inapposite, for the injuries occurred in railroad yards, a circumstance held by the West Virginia Court to be sufficient to exonerate the railroad from liability to trespassers. See Payne v. Virginian Ry. Co., 1948, 131 W.Va. 767, 51 S.E.2d 514, 517. Moreover, the recent Hall and Stokey cases do not pertain to lookout, for in them the railroads were found to be wantonly negligent in not stopping the train after discovering the trespassers.

The plaintiffs, on the other hand, point to those cases which hold that, at least where infants are concerned, the railroad must keep a reasonable lookout to discover trespassers on the tracks. Gunn v.

Ohio River R. Co., 1896, 42 W.Va. 676, 26 S.E. 546, 36 L.R.A. 575; McGuire v. Norfolk & W. R. Co., 1912, 70 W.Va. 538, 74 S.E. 859; Bias v. Chesapeake & O. Ry. Co., 1899, 46 W.Va. 349, 33 S.E. 240; Dempsey v. Norfolk & W. R. Co., 1911, 69 W.Va. 271, 71 S.E. 284, 34 L.R.A.,N.S., 682; Prok v. Norfolk & W. R. Co., 1915, 75 W.Va. 697, 84 S.E. 568; Dickinson v. New River & Pocahontas Consol. Coal Co., 1915, 76 W.Va. 148, 85 S.E. 71, 73; and Robertson v. Coal & Coke R. Co., 1920, 87 W.Va. 106, 104 S.E. 615.[1]

McGuire v. Norfolk & W. R. Co., 1912, 70 W.Va. 538, 74 S.E. 859, 862 affords an explanation for these seemingly variant principles:

> "The law imposes a greater duty upon railroad companies to keep a lookout for small children trespassing upon its tracks than it does in case of adult persons in full possession of their faculties. It owes to the former the duty to keep a reasonable lookout for them consistent with the other duties of its employés engaged in the operation of its trains; and if children are discovered upon the tracks, or perilously near the same, the company's servants are bound to exercise reasonable diligence to avoid injury to them. Defendant's instruction No. 7 was therefore properly refused. By it defendant asked the court to apply the same rule to the infant deceased that the law applies in the case of an adult trespasser."

It is not for us to debate the justification for this distinction, but only to follow the law as enunciated by the highest court of the State. Undoubtedly, the West Virginia Court has permitted recovery by infant trespassers in circumstances where relief would be denied to adults. Indeed, the defendant has cited no case denying recovery to an infant trespasser where the railroad could have avoided the accident, had a reasonable lookout been maintained.[2] A study of the cases convinces us that the trial Judge properly applied the West Virginia law, which required the case to be submitted to the jury.

## II.

The defendant asserts that the trial Judge should have declared the plaintiff guilty of contributory negligence as a matter of law, and that he erred in submitting the question to the jury. We do not agree. In West Virginia the presumption, although rebuttable, is that a child between the ages of 7 and 14 years is incapable of contributory negligence, Pitzer v. M. D. Tomkies & Sons, 1951, 136 W.Va. 268, 67 S.E.2d 437, 442, and where the defendant owes a duty to exercise reasonable care for an infant plaintiff's safety, the burden of proving such a plaintiff's mental capacity to comprehend and avoid danger is on the defendant. Simmons v. Chesapeake & O. R. Co., 1924, 97 W.Va. 104, 124 S.E. 503,

[1] One judge on the Supreme Court of Appeals of West Virginia has characterized this area of the law as follows: " * * * our cases are in well nigh hopeless conflict." Payne v. Virginian Ry. Co., 131 W.Va. 767, 51 S.E.2d 514, 521. Even so, it would not be for us to attempt to reconcile all the cases; but we think no such conflict exists in respect to infants.

[2] Angiline v. Norfolk & W. R. Co., 1925, 99 W.Va. 85, 128 S.E. 275, 277, 43 A.L.R. 34 is not in point. There the brakeman repeatedly warned the plaintiff, almost 6 years old, not to jump on the train. The plaintiff paid no attention, and when the train started moving and the brakeman was not in sight, the plaintiff grabbed hold of a stirrup on one of the moving cars and was injured. In affirming judgment for the railroad, the Court said that the duty of a railroad to keep a lookout for trespassing children did not extend to requiring the railroad "to police its tracks while the trains were in motion to see that trespassers did not board the cars, or to stop the movement of the trains because some trespasser has indicated a disposition to board it."

Martin v. Hughes Creek Coal Co., 1912, 70 W.Va. 711, 75 S.E. 50, 41 L.R.A.,N.S., 264 and Dickinson v. New River & Pocahontas Consol. Coal Co., 1915, 76 W.Va. 148, 85 S.E. 71 are dissimilar, for, as was clearly stated in these opinions, the lookout duty of a public railroad is not applicable to a private coal company operating its own railway.

505. We cannot say, nor was it for the District Judge to say, as a matter of law that the plaintiff, 9 years and 8 months of age, acted unreasonably and thoughtlessly for a boy of his age and intelligence by fishing from the railroad trestle and failing to escape from his position of danger in time to avoid the oncoming train.[3] As was said in Stokey v. Norfolk & Western Ry. Co., 1949, 132 W.Va. 771, 55 S.E.2d 102, 110: "Whether decedent [74 years old] could or could not have escaped from her perilous position [on the railroad's bridge] undoubtedly is a jury question."

### III.

■ The defendant further contends that the parents are not entitled to recover for the medical expenses and loss of their son's services because the mother herself was negligent in permitting him to be upon the trestle. On the afternoon of the accident, she drove the boy to a young friend's home, which was next to the railroad tracks, so that he could go fishing with the friend and his grandfather. The mother left Jimmy in front of the house, said that she would return to pick him up in an hour, and drove off. Discovering that no one was in the house, Jimmy proceeded alone to the railroad trestle where the accident happened. Considering that he had never before gone on the trestle and that his mother thought that an adult would accompany him while fishing, it was for the jury to decide whether the mother should have been more diligent in ascertaining whether someone was at home. The circumstances under which Jimmy was left in front of the house are insufficient in law automatically to bar the parents' recovery.

### IV.

■ The defendant next complains that the verdicts are excessive and that the trial court abused its discretion in refusing to set them aside. The parents were awarded $17,500.00. It was shown that the medical expenses already incurred, plus anticipated medical bills and cost of artificial limbs until the boy becomes 21 years of age, total more than $15,000.00. Attributing the remainder of the verdict to anticipated loss of earnings during legal infancy, it cannot be said that the jury's estimate of this loss of services, to which the parents are entitled, was unreasonably speculative.

■ The award to the infant plaintiff of $150,000.00 is attacked by the defendant, relying on Virginian Ry. Co. v. Armentrout, 4 Cir., 1948, 166 F.2d 400, 4 A.L.R.2d 1064. In that case, this Court considered excessive a verdict of $160,000.00 in favor of a 13 month old baby who lost one arm above the elbow and the other above the wrist when run over by one of the defendant's trains. It does not necessarily follow, however, that a verdict deemed excessive ten years ago must be viewed similarly today. Common experience attests that the value of the dollar has been subject to consistent depreciation, the cost of living index having risen 23.7% since 1947–48.[4] In Armentrout the Court compared the amount of the verdict to the maximum

3. Donald v. Long Branch Coal Co., 1920, 86 W.Va. 249, 103 S.E. 55 does not support the defendant's contention that the infant plaintiff's catching his foot in the cross-tie while attempting to run from the trestle was the proximate cause of his injury. In the Donald case, the plaintiff's injury was caused by her *leaving a place of safety* and then tripping on some cross-ties the defendant had placed in a ditch near the track.

4. Monthly Labor Review, January, 1959, p. 112. Courts, federal and state, throughout the land have taken judicial notice of the diminished purchasing power of money and have held that this is a factor to be considered in making and in reviewing awards of damages. Kroger Company v. Rawlings, 6 Cir., 1958, 251 F.2d 943; Cox v. Remillard, 9 Cir., 1956, 237 F.2d 909; Kessen v. Bernhardt, D.C. Minn.1958, 157 F.Supp. 652; Foster v. Donora Southern Railroad Company, D.C.W.D.Pa.1956, 144 F.Supp. 297, affirmed 3 Cir., 1957, 241 F.2d 714; Hord v. National Homeopathic Hospital, D.C.D. C.1952, 102 F.Supp. 792, affirmed 1953, 92 U.S.App.D.C. 204, 204 F.2d 397. Cf. Waterman S. S. Corporation v. Dean, 4 Cir., 1948, 171 F.2d 408, 413. See also Annotation, Damages—Increased Cost of Living, 12 A.L.R.2d 611, and annual supplements thereto, for references to state cases.

workmen's compensation benefits then allowed in West Virginia. Significantly, this maximum figure is now 67% greater, West Virginia Code of 1955, Sec. 2531 (h).

The testimony reveals that the cost of artificial limbs alone from the age 21 for the duration of this plaintiff's life expectancy is estimated at $20,000.00. Also before the jury was the fact that the boy's Intelligence Quotient was less than 100. Since it is unlikely that he will "develop high earning capacity in intellectual pursuits," Virginian Ry. Co. v. Armentrout, supra [166 F.2d 407], his loss of earning power is rendered greater in a manual vocation. Relevant also, perhaps is that the humiliation suffered, according to the reasoning in Armentrout, is increased when the mutilation is sustained in later years of life; and in the case at bar we are concerned with a boy almost 10 years old, compared to a 13 month old infant in Armentrout.

The jury was not subjected in the instant case to an emotional appeal by the District Judge, as is said to have happened in Armentrout. Considering all the circumstances, we find no abuse of discretion in his denial of the motion to set the verdicts aside for excessiveness.

### V.

The defendant's remaining claims involve alleged abuses of judicial discretion by the trial court in refusing to permit the jury to view the scene of the accident, 38 miles from the courthouse; in certain rulings, restrictive or expansive, relating to the scope of the testimony in chief and particularly on cross-examination; and in making certain comments during the trial. These and similar assignments of error have been considered. None, in our opinion, is meritorious or requires discussion. The trial was fairly conducted, and the jury was competently and correctly instructed on all aspects of the case.

The judgments of the District Court will be

Affirmed.